FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2008 AUG 11  A [illegible]

CLERK'S OFFICE
AT BALTIMORE

**U.S. Department of Justice**

United States Attorney
District of Maryland
Northern Division

Rod J. Rosenstein
United States Attorney

Christine Manuelian
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4852
MAIN: 410-209-4800
FAX: 410-962-9293
TTY/TDD: 410-962-4462
Christine.Manuelian@usdoj.gov

September 29, 2008

Ronald Kurland, Esquire
1017 North Calvert Street
Baltimore, MD 21202

RE: <u>United States v. Mohammad Salim, a/k/a Sonny</u>
Criminal No. MJG-07-0418

Dear Mr. Kurland:

This letter confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by October 10, 2008, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

1. The Defendant agrees to plead guilty to Count 2 of the Second Superseding Indictment now pending against him, which charges him with conspiracy to launder monetary instruments in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(3)(B). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

<u>Elements of the Offense</u>

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   a. First, that between in or about May 2006 through on or about September 20, 2007, the Defendant agreed with one or more persons to conduct a financial transaction affecting interstate and foreign commerce involving property believed by the defendant, based upon the representations of an individual acting at the direction of law enforcement, to be the proceeds of some form of unlawful activity and used to conduct and facilitate such activity, namely, drug trafficking in violation of Title 21, Unite[d] or disguise the property's nature, location, so[urce]

July 2008

GOVERNMENT'S EXHIBIT NO. _1_
CASE NO. _MJG-07-0418_
IDENTIFICATION: _____
ADMITTED: _____

b. Second, that the Defendant became a member of the conspiracy knowingly and intentionally.

### Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 20 year imprisonment, a fine of $250,000, and a term of supervised release of not more than 3 years. The Defendant is also liable to the United States for a civil penalty of not more than the greater of the value of the property, funds, or monetary instruments involved in the charged financial transaction, or $10,000. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

  c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

  d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

  e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

## Statement of Facts

Afridi Trading, a/k/a Afridi Export, was a fake import/export company utilized by an individual acting in an undercover capacity under the supervision of law enforcement agents with United States Immigration and Customs Enforcement ("ICE") and the Federal Bureau of Investigation ("FBI"). At the direction of the ICE and FBI agents, this individual (hereinafter "cooperating witness") held himself out to be involved in numerous illegal activities, including: large-scale international drug trafficking, and international smuggling of counterfeit cigarettes and other goods and contraband, including weapons.

Between May 2006 and September 19, 2007, the cooperating witness, acting at the direction of ICE and FBI agents in Maryland, provided a total of approximately $1,655,000 in U.S. currency to Abdul REHMAN, a/k/a Rahim, a co-defendant in this case, and his associates for the purpose of transferring the monies abroad through the "hawala" method of currency transfer. The cooperating witness represented that the monies were the proceeds of, and related to, his illegal drug trafficking. A "hawala" is an informal money transfer system utilizing a network of persons and/or businesses to facilitate the transfer of monies across domestic and international borders without reliance upon conventional banking systems and regulations. Engaging in a money transmission business without an appropriate state license is punishable as a felony crime under Section 1960 of Title 18, United States Code, and the laws in the States of Maryland and New York. None of the defendants named in the indictment in this case were licensed and/or authorized in Maryland or New York to engage in money transmissions.

Each hawala transaction in this case was coordinated by REHMAN. Upon being told by the cooperating witness what amount of money he wished to have transferred, REHMAN would make arrangements with his associates as to how, when and where the monies would be obtained from the cooperating witness, and the manner of delivery of the equivalent amount of monies, minus commissions, to the cooperating witness, his third party designee, or a designated bank account in locations outside of the United States, specifically Spain and Australia. On average, REHMAN and his associates retained a commission of approximately five to seven percent of the total amount of currency sought to be transferred on each occasion by the cooperating witness.

REHMAN and his associates utilized a number of money couriers to pick up currency from the cooperating witness in Maryland and New York. Both the cooperating witness and the couriers received instructions from REHMAN or his associates via text messages that contained coded references regarding the amount of the money to be transferred, the identity of the relevant parties to each transaction, and contact information, such as serial numbers on dollar bills which would be used to identify the cooperating witness to the couriers and vice versa.

REHMAN relied, in part, on an individual referred to as "Haji," who was primarily located in Pakistan, to direct the cooperating witness to various individuals, including individuals named in the indictment, who were responsible for receiving currency from the cooperating witness in the United States. One of the individuals to whom the cooperating witness was directed to give money was the Defendant, Mohammad Salim, a/k/a Sonny. The Defendant was born in Bangladesh and resided in New Jersey at the time of the indictment in this case. The Defendant became a citizen of the United States in September 1990.

In late June 2007, REHMAN, "Haji" and the cooperating witness discussed arrangements for a $500,000 hawala transaction involving a hand-to-hand transfer of cash in Spain. In response to text messages from "Haji," the cooperating witness met with a co-defendant in this case, Afzal Shaikh, a/k/a Zell, on July 3, 2007, at a location in Harford County, Maryland, and gave him $300,000 in exchange for three $50 bills with serial numbers matching those relayed in the text messages from "Haji."

On July 4, 2007, the cooperating witness received additional text messages from "Haji" directing him to meet individually with the Defendant and Shaikh to provide them with the remaining $200,000. Later that day, the Defendant met with the Defendant at a location in Baltimore, Maryland, and gave him $100,000. The Defendant gave the cooperating witness a $1 bill with a serial number matching that received by the cooperating witness in the text message from "Haji." The cooperating witness subsequently met with Shaikh at the same location and provided the remaining monies in exchange for a $100 bill with matching serial numbers.

On July 10, 2007, at a location in Madrid, Spain, REHMAN met with the cooperating witness and gave him a quantity of Euros equivalent to the $500,000 provided by the cooperating witness to the Defendant and Shaikh, minus commissions.

During his meeting with Salim, the cooperating witness told him that he made his money from selling drugs. He stated, "I sell seven kilos of drugs and make one million dollars in one night." He indicated that he had problems moving his money. Salim asked the cooperating witness if they could make arrangements to do another money deal right away and said he would only charge the cooperating witness a commission of 4%.

### Advisory Guideline Calculation

Pursuant to U.S.S.G. § 2S1.1(a)(2), the base offense level is 16, which includes a base level of 8 plus an additional 8 levels under § 2B1.1(b)(1)(E) to account for over $70,000, but no more than $120,000, in laundered funds reasonably foreseeable to the defendant. In accordance with § 2S1.1(b)(1), there is a 6 level upward adjustment because the defendant believed that the laundered funds were the

proceeds of drug trafficking. In accordance with § 2S1.1(b)(2)(B), there is a 2 level upward adjustment for conviction under 18 U.S.C. § 1956. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. The resulting offense level is **twenty-one (21)**.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. With respect to the calculation of the advisory guidelines range, the parties agree that no other offense characteristics, sentencing guidelines factors, or potential departures and adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The Defendant reserves the right to argue for the applicability of a variance pursuant to 18 U.S.C. § 3553(a).

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence of incarceration within the applicable guideline range and move to dismiss any open counts against the Defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Waiver of Appeal

11. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any fine, term of supervised release, or order of restitution and any issues that relate to the establishment of the advisory guidelines range, as follows: the Defendant waives any right

to appeal from any sentence within or below the advisory guidelines range resulting from an adjusted base offense level of 21, and this Office waives any right to appeal from any sentence within or above the advisory guidelines range resulting from an adjusted base offense level of 21. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

12.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

13.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or

if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

14. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and addendum and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Christine Manuelian
Assistant United States Attorney

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

OCT 9th 2008
Date

Mohammad Salim, a/k/a Sonny

I am Mohammad Salim's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

<u>8-10-09</u>             _____
Date                           Ronald Kurland